UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| WADE STARKEY, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 3:05-CV-397 RM |
| ) | |
| JO ANNE B. BARNHART, ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant ) | |

OPINION AND ORDER

Wade Starkey seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 416(I) and 423, and Supplemental Security Income (SSI) benefits under Title XVI of the Act, 42 U.S.C. § 1382(c). The Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). For reasons that follow, the court reverses the Commissioner's decision.

Mr. Starkey applied for Disability Insurance Benefits ("DIB") on January 22, 2002 and for Supplemental Security Income ("SSI") on February 15, 2002 alleging disability as of December 28, 2001. His claim was denied initially and on reconsideration. On April 16, 2004, an administrative hearing was conducted, at which Mr Starkey and a vocational expert, Dr. Leonard Fisher, testified. The ALJ found on the basis of the evidence presented at that hearing and his review of the

record that Mr. Starkey was not disabled within the meaning of the Act and was not entitled to disability insurance benefits or eligible for supplemental security income payments. When the Appeals Council denied review, the ALJ's decision became the agency's final decision. 20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). This appeal followed.

The ALJ used the standard five-step evaluation process in determining whether Mr. Starkey was disabled. *See* Bowen v. Yuckert, 482 U.S. 137, 141 (1987); Stevenson v. Chater, 105 F.3d 1151, 1154 (7th Cir. 1997). He found at steps one, two, and three that Mr. Starkey had performed no substantial gainful activity since the alleged onset of disability, and that his right knee problem was a "severe" impairment, but not severe enough to meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpt. P, Regulations No. 4. At step four, the ALJ found that Mr. Starkey retained the functional capacity to perform sedentary work that did not involve climbing, balancing, crouching, kneeling, crawling, or even moderate exposure to wetness, and that he could not perform any of his past relevant work. Relying on the vocational expert's testimony and using the Medical Vocational Guidelines as a framework for his decision, the ALJ concluded at the fifth and final step of the evaluation that there were a significant number of jobs in the national economy that Mr. Starkey still could perform given his age, education, work experience, and residual functional capacity. He thus concluded that Mr. Starkey was not disabled and was not entitled to a period of

2

disability and disability insurance benefits or eligible for supplemental security income payments.

I. BACKGROUND

At the time of the hearing, Mr. Starkey was 39-years old, had a tenth-grade education, and had previously worked various construction and manufacturing jobs.

Mr. Starkey testified at his hearing that he had not worked since December of 2001 due to a torn anterior cruciate ligament ("ACL") which had thus far required three reconstructive surgeries.  He testified that his knee still gave him pain, kept him up at night, and caused him to fall.  Mr. Starkey stated that he could walk about a block before needing to sit down, stand for 15 or 20 minutes, sit for only 15 or 20 minutes, and lift only five to ten pounds.  Anything more reportedly caused his leg to buckle.  He testified that he was taking no pain medications at that point because they hadn't worked, and that he spent his days helping with housework once in a while, walking around his neighborhood, and sitting outside, but did not do yard work, maintenance or repairs, and could no longer hunt or fish as he used to.  Mr. Starkey indicated that he could dress and bathe, as well as drive, but not far, and shop once in a while.

The ALJ asked the vocational expert, Dr. Fisher, whether a hypothetical claimant who is 39 years old, has a tenth grade education, has Mr. Starkey's past work history and is limited to jobs requiring no climbing, balancing, crouching,

3

crawling, or kneeling, and no moderate exposure to wetness, would be capable of any of Mr. Starkey's past employment.  Dr. Fisher replied, "no," but that jobs exist in the national economy that such a claimant could perform.  The ALJ asked whether that hypothetical claimant with all of those limitations who was also limited to lifting no more than five pounds, sitting for no more than an hour at a time, and walking for no more than 20 to 30 minutes at a time could perform any job that exist in significant numbers.  Dr. Fisher replied that such a claimant could perform the jobs of surveillance security monitor, taper, charge account clerk, film touch-up inspector, and "bonder semi-conductors."  He testified that there are approximately 200 charge account clerk positions in the region, 200 bonder semi-conductors positions, 300 surveillance security monitor positions, and 300 film touch-up inspector positions.  Finally, Dr. Fisher testified that the hypothetical claimant with limitations consistent with Mr. Starkey's testimony would be unable to perform any of these jobs.

There is no dispute that the medical evidence supports Mr. Starkey's testimony as to the nature of his impairment.  A general consensus exists as among the examining physicians about Mr. Starkey's limitations. Treating orthopedic surgeon Thomas Krizmanich found degenerative changes in Mr. Starkey's right knee. Treating physician Charles Kershner opined in an October 10, 2001 letter that Mr. Starkey had a 42 per cent impairment of his lower extremity, subsequent to treatment.  Dr. Kershner also noted in early 2002 that Mr. Starkey had post-traumatic arthritis and will eventually need total knee replacement.

4

Treating orthopedic surgeon Alfredo Domingo noted in April 2004 that Mr. Starkey had bone defects from the previous surgeries, which would require bone grafting and yet another reconstruction of the ACL in order to correct.  Dr. Domingo stated that the previous reconstruction failed and left the knee unstable.

Dr. Wassim Khawandi examined Mr. Starkey on April 6, 2002 on behalf of the SSA and found that Mr. Starkey's injury gas severely affected his daily life activity.

> In fact, his gait . . . is completely abnormal with a wide based gait, as well as severe limping.  His balance is unsteady while attempting to do tandem walking and he cannot walk or cannot reach for objects on the floor. . . . I would not advise the patient to carry beyond 10 lb [sic] as this would impose further risk of injury to the right knee. . . . Walking is affected and restricted, as this would impose recurrent minor trauma to the right knee, causing more pain.  Pushing and pulling are affected as the patient has significant loss of balance and this might put him at risk of recurrent falls.

(AR at 153.)

Dr. Bijal Katarki examined Mr. Starkey on November 2, 2002 for the SSA and reported:

> I can conclude from the information available today and from the exam that the patient's daily life activity has been affected due to his knee pain.  I think he can lift and carry no more than five lbs of weight for a short period of time.  He cannot walk for more than 20-30 minutes at a time.  He would not have any trouble with sitting for up to an hour.  He would have trouble with pushing and pulling as the patient is unsteady on his feet and this would increase the risk of falls.

(AR at 166.)

5

In an April 2002 evaluation, vocational rehabilitation specialist Sheena Whitaker of Indiana Vocational Rehabilitation Services found that Mr. Starkey was unable to walk long distances or stand for any length of time, and that he could sit and work for an average of 1.25 hours, due to severe knee pain. Ms. Whitaker concluded that his vocational limitations included, among other things, a one-and-a-half hour work day. (AR at 198-200).

In contrast, Dr. J.V. Corcoran reported in his June 7, 2002 Physical Residual Functional Capacity Assessment, which was based upon a review of medical records, that Mr. Starkey is able to stand, walk or sit for six hours in an eight-hour work day and has unlimited ability to push and/or pull.

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited. 42 U.S.C. § 405(g); Jones v. Shalala, 10 F.3d 522, 523 (7th Cir. 1993). A court must sustain the ALJ's findings so long as they are supported by substantial evidence. 42 U.S.C. 405(g); Scott v. Barnhart, 297 F.3d 589, 593 (7th Cir. 2002); Schoenfeld v. Apfel, 237 F.3d 788, 792 (7th Cir. 2001). The term "substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A court may not substitute its judgment for that of the ALJ by reconsidering the facts, reweighing the evidence or resolving factual disputes. Scott v. Barnhart, 297 F.3d at 593; Maggard v. Apfel, 167 F.3d 376, 378 (7th Cir, 1999).

6

The reviewing court may not reconsider credibility determinations made by the ALJ unless those determinations are patently wrong. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001); Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

While the ALJ needn't discuss every piece of evidence in the record, Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001), the decision must demonstrate the path of his reasoning, and the evidence must lead logically to his conclusion. Rohan v. Chater, 98 F.3d 966, 971 (7th Cir. 1996). Remand is required if the reviewing court cannot see an "accurate and logical bridge between the evidence and the result." Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996).

### III.  DISCUSSION

Mr. Starkey challenges the ALJ's findings at steps three, four, and five of the disability determination. He contends that the ALJ erred when he: did not adequately articulate the bases of his finding at step three that Mr. Starkey's impairment did not meet or equal the requirements of a listed impairment; did not discuss or accurately characterize evidence that supported Mr. Starkey's assertion of disability pain and inability to work; and presented an incomplete hypothetical to the vocational expert and then relied on his testimony to find that there were a significant number of jobs that Mr. Starkey could still perform.

The ALJ didn't cite the specific listing that he considered at the third step of the evaluation, or discuss his reasoning. He simply stated that:

7

> The medical evidence indicates that the claimant has right knee problems, an impairment that is "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

Mr. Starkey contends that substantial evidence supports his assertion that his knee and related hip impairments met or equaled the requirements of at least one, if not more, of the impairments listed in 20 C.F.R. Part 404, Subpt. P, App. 1, specifically Listing 1.02A,[1] Listing 1.03A (the "old rule")[2], and/or Listing 1.03 (the "new rule" that went into effect on February 19, 2002)[3]. He contends that the

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02A (2002), which incorporates the old 1.03A lists as a disability:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.03 (2001) lists as a disability:

Arthritis of a major weight-bearing joint (due to any cause): With history of persistent joint pain and stiffness with signs of marked limitation of motion or abnormal motion of the affected joint on current physical examination. With:
A. Gross anatomical deformity of hip or knee (e.g. subluxation, contracture, bony or fibrous ankylosis, instability) supported by X-ray evidence of either significant joint space narrowing or significant bony destruction and markedly limiting ability to walk and stand; or
B. Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint and return to full weight-bearing status did not occur, or is not expected to occur, within 12 months of onset.

[3] The new Section 1.03, which corresponds to the old § 1.03B lists "Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset."

ALJ's failure to identify which listing he considered or to discuss its application to the facts in this case, when combined with his failure to state any rationale for disregarding evidence that supported Mr. Starkey's claim for benefits in constitutes reversible error.  The court agrees.

A. *The ALJ's Step 3 Analysis*

While a deficiency in the ALJ's decision is not a sufficient reason for setting aside an administrative finding when the deficiency had no practical effect on the outcome of the case, *see* Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002) (citing Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999)); Keys v. Barnhart, 347 F.3d 990, 994-95 (7th Cir. 2003) (doctrine of harmless error fully applicable to judicial review of administrative decisions), the ALJ's failure to discuss or even cite a listing, if combined with a perfunctory analysis, may require a remand.  Brindisi ex rel. Brindisi v. Barnhart, 315 F.3d 783, 786 (7th Cir. 2003); Scott v. Barnhart, 297 F.3d at 595-596; Steele v. Barnhart, 290 F.3d 936 (7th Cir. 2002).

The Commissioner argues that the 2001 version of Listing 1.03A (the "old rule"), upon which Mr. Starkey relies, expired on July 2, 2001, and that under the current version (the "new rule"), Mr. Starkey's impairment doesn't meet or equal any listed impairment.[4] She contends that the "agency physician consultants, Dr.

---

[4] Mr. Starkey argues in his reply brief that the new rule was not intended to and cannot be applied retroactively in his case because Congress did not give the Social Security Administration the express power to engage in retroactive rule-making. *Citing* Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 213 n. 3 (1988); Combs v. Commissioner of Social Security, 400 F.3d 353, 358 (6th Cir. 2005).  Assuming

9

Corcoran and Dr. Lavallo, expressly addressed the issue of whether [Mr. Starkey] met or equaled the impairment Listings on their disability determination forms [AR 22 and 24] and found that he did not," and reasons that the court can infer from his decision that the ALJ accepted the opinions of those physicians, and applied the relevant Listing, even if he didn't explicitly refer to it in the decision. See Rice v. Barnhart, 384 F3d 363, 369-370 (7th Cir. 2004); Barnett v. Barnhart, 381 F.3d 664, 668 (7th Cir. 2004); Scheck v. Barnhart, 357 F.3d 697, 700-701 (7th Cir 2004); Henderson ex rel. Henderson v. Apfel, 179 F.3d 507, 514 (7th Cir. 1999).

To affirm the ALJ's findings at step three, the court would need to infer that the agency's consulting physicians and the ALJ made a determination about which version of Listing 1.03 was applicable, applied the correct version, determined that no other Listings were relevant, and concluded on the basis of the evidence that Mr. Starkey's impairments didn't meet or equal any of the requirements of that listing. The Commissioner's reliance on the agency physicians' disability determinations as a foundation for such inferences is misplaced.  The forms completed by Drs. Corcoran and Lavallo contain no information about what Listings were considered in determining whether Mr. Starkey was disabled; the physicians simply checked a box that said "Claimant Not Disabled Through Date of Current Determination."  Both physicians left the box marked "List No." blank.

---

arguendo that the new rule was applicable, Mr. Starkey argues that the ALJ still erred by failing to discuss the particular listings in the new rules that he considered at step three, or to consider alternative listings, which were "equally, if not more, applicable," like Listing 1.02A.

To accept the commissioner's position, the court would need to infer from the absence of any "List No." that Drs. Corcoran and Lavallo applied the new version of Listing 1.03, and found that Mr. Starkey's impairment didn't meet or equal that, or any other, Listing.  The court cannot see the "logical bridge between the evidence and the result," Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996), and finds no support in any of the cases cited by the Commissioner for the proposition that it can make inferences that have no basis in fact.

### B. *Analysis of Conflicting Evidence*

Mr. Starkey contends that the ALJ's analysis at steps four and five is flawed because the ALJ did not properly assess the claimant's credibility or give any rationale for disregarding evidence that supported his claim, and based his hypothetical to the vocational expert on incomplete information.

The ALJ found that:

> [T]here is certainly no objective evidence to support a finding that the claimant is able to lift or carry just five pounds or that he would have difficulty sitting for prolonged periods.  The claimant's allegations regarding an inability to sit for prolonged periods, disabling knee pain, and frequent falling due to his knee giving out on him are not found to be credible since they are not consistent with the objective medical evidence nor are they corroborated by the majority of the examining or treating physicians.  In addition the claimant testified that he does not take any pain medications and that he is able to care for his personal needs, drive, shop occasionally, and do light housework; this is not consistent with a more restrictive assessment of the claimant's residual functional capacity.

(A.R. at 18).

The ALJ's assessment of Mr. Starkey's credibility and his residual functional capacity was based, at least in part, on the inaccurate assertion that there was no objective evidence supporting Mr. Starkey's assertions of disabling pain and an inability to sit or stand for prolonged periods.  Mr. Starkey's treating physicians may not have provided any meaningful statement regarding his physical limitations, but they all agreed that he had a medical condition that reasonably could be expected to cause pain and that his condition was deteriorating to the point that additional surgery may be required.

Most significantly, when the ALJ assessed credibility and Mr. Starkey's residual functional capacity, he didn't consider the vocational evaluation Sheena Whitaker completed in April 2002.  The ALJ briefly summarized some of Ms. Whitaker's findings, but omitted others, notably her opinion that Mr. Starkey could not work for more than one and a half hours a day due to severe knee pain.  He neither accepted or rejected Ms. Whitaker's findings and conclusions, but simply didn't address them.  Had the vocational expert who testified at the hearing been aware of Ms. Whitaker's evaluation and the additional vocational limitations it imposed, his testimony regarding the number of jobs available to Mr. Starkey may very well have been different. Without a meaningful analysis of all the relevant evidence, the ALJ's credibility determination must be deemed patently wrong, and his findings at steps four and five must be deemed unsupported by substantial evidence.

IV. *Conclusion*

The ALJ's failure to identify which listing he considered or to discuss its application to the facts in this case cannot be considered harmless error, when, as here, it is combined with an otherwise perfunctory analysis of the evidence. *See* Brindisi ex rel. Brindisi v. Barnhart, 315 F.3d 783, 786 (7th Cir. 2003); Scott v. Barnhart, 297 F.3d at 595-596; Steele v. Barnhart, 290 F.3d 936 (7th Cir. 2002). Accordingly, the Commissioner's final decision is REVERSED and the matter REMANDED for further proceedings.

SO ORDERED.

ENTERED:   September 29, 2006

                                     /s/ Robert L. Miller, Jr.
                                Chief Judge, United States District Court
                                Northern District of Indiana